**In re EASTOWN AUTO CO.,**
**Alleged Debtor.**

**BOOHER ENTERPRISES, Appellant,**

v.

**EASTOWN AUTO CO., Appellee.**

**BAP Nos. 97–8056, 97–8057.**

Bankruptcy Appellate Panel
of the Sixth Circuit.

Submitted Oct. 24, 1997.

Decided Jan. 23, 1998.

Alfred W. Schneble III, on brief, Dayton, OH, for Appellant.

Arthur R. Hollencamp, on brief, Hollencamp & Hollencamp, Dayton, OH, for Appellee.

Before: BAXTER, RHODES, and STOSBERG, Bankruptcy Appellate Panel Judges.

## OPINION

Booher Enterprises ("Booher"), Don E. Graham and Jamie Smith filed an involuntary Chapter 7 petition against Eastown Auto Co. ("Eastown"). Eastown filed a motion to dismiss, asserting that an insufficient number of eligible creditors had signed the petition. The bankruptcy court found that because Eastown had more than twelve eligible creditors, the bankruptcy code required that at least three eligible petitioning creditors join the petition. The bankruptcy court also found that two of the petitioning creditors, Booher and Graham, did not qualify as petitioning creditors. The bankruptcy court accordingly dismissed the involuntary petition. Booher appealed. For the following reasons, the Panel affirms.

In affirming, the Panel adopts the test of *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D.Mich.1986) for determining whether the petitioning creditors are qualified under 11 U.S.C. § 303(b) and also for determining the number of the alleged debtor's eligible creditors. In this case, in finding that there was only one qualified petitioning creditor, the bankruptcy court properly applied *Lough*. However, the court did not apply *Lough* in determining the number of eligible creditors. Nevertheless, the Panel concludes that there is sufficient evidence in the record for it to determine the number of eligible creditors under *Lough* and that a remand is unnecessary. Applying the *Lough* test, the Panel concludes that the bankruptcy court properly determined that Eastown had twelve or more creditors.

---

1. There is some dispute as to the spelling of this name. Booher Enterprise's brief refers to "Bellhouser" as do pleadings filed by Booher Enterprise's attorney. Eastown's brief refers to Beilharz. At the May 1, 1997 hearing an attorney appeared on Joey Beilharz' behalf and spelled the name for the record as B-e-i-l-h-a-r-z. (May 1, 1997 Transcript at 28.) The Panel will use that spelling.

## I. ISSUES ON APPEAL

Booher raises two issues on appeal. First, Booher argues that the bankruptcy court erred in finding that there were more than twelve creditors. Second, Booher asserts that the bankruptcy court erred by vacating an order approving the "memorandum of intent to join as a creditor" filed by creditor Joey Beilharz.[1]

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP. The parties have consented to the transfer of this appeal to the BAP.

A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (Citations omitted). An order dismissing an involuntary petition is a final order.

Dismissal of a bankruptcy case is reviewed for abuse of discretion. *In re McDonald*, 118 F.3d 568 (7th Cir.1997); *In re Green*, 64 B.R. 530 (9th Cir. BAP 1986). A bankruptcy court abuses its discretion when "it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs )*, 103 F.3d 472 (6th Cir.1996). A bankruptcy court's findings supporting dismissal of a bankruptcy petition are factual determinations. *In re Hollis*, 150 B.R. 145 (D.Md.1993). Findings of fact are reviewed under the clearly erroneous standard. FED. R. BANKR.P. 8013. A finding of fact is clearly

erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■■■■ Conclusions of law are reviewed de novo. *Nicholson v. Isaacman (In re Isaacman )*, 26 F.3d 629 (6th Cir.1994). De novo means deciding the issue as if it had not been heard before. *In re Downs*, 103 F.3d 472. No deference is given to the trial court's conclusions of law. *Razavi v. Commissioner*, 74 F.3d 125 (6th Cir.1996).

### III. FACTS

On January 31, 1997, Booher, Smith and Graham filed an involuntary Chapter 7 petition against Eastown. In the petition, Booher did not list the nature or amount of its claim. Smith stated that he had a $12,300 judgment. Graham claimed that Eastown owed him $5,850. On February 14, 1997, Eastown filed a motion to dismiss, asserting that the petition lacked the required number of petitioning creditors because there were bona fide disputes regarding the claims of the petitioning creditors.

On March 27, 1997, the bankruptcy court entered an order setting a deadline for other unsecured creditors to join the petition. The order stated that counsel for Booher consented to the April 1, 1997 deadline. On April 1, 1997, Booher's attorney filed a "memorandum of intent to join as petitioner" on behalf of the Internal Revenue Service. On April 2, 1997, Joey Beilharz filed a "memorandum of intent to join as a creditor." That memorandum stated that Beilharz's claim was based on a $6,873.23 judgment entered on October 24, 1996. Booher filed a motion to approve Beilharz's untimely memorandum. On April 16, 1997, the bankruptcy court entered an order granting the motion.

On April 23, 1997, Eastown filed a motion to vacate the April 16 order, asserting that the order was entered before its attorney had received the motion in violation of FED. R. BANKR.P. 9006(d), and that there was no basis for an ex-parte order. On the same day, Eastown also filed a motion in limine, requesting that the court determine whether the IRS and Beilharz had become petitioning creditors simply by filing memoranda of intent.

On May 1, 1997, the court conducted a hearing on the motion to vacate the April 16 order and on the motion in limine. When the court asked Beilharz's attorney to clarify whether Beilharz was a petitioning creditor, the attorney indicated that Beilharz had authorized the memorandum of intent to join, but nothing further. The court found that the memorandum of intent was filed after the deadline and that the creditor had not actually joined the petition. Therefore, the court vacated the April 16 order. (Transcript of May 1, 1997 hearing at 35.)

On May 1, 1997, the court also conducted a hearing on the motion to dismiss. The court held that the IRS could not be considered a petitioning creditor because although it had filed a memorandum of intent to join the petition by the deadline, it had not actually joined the petition as of the hearing and did not appear at the hearing. The court also determined that Eastown had more than twelve creditors. The court then examined the claims of the three petitioning creditors to determine whether they were subject to bona fide disputes. The court found that the claims of Booher and Graham were subject to bona fide disputes and that they were not eligible to be petitioning creditors. Because there were more than twelve creditors and fewer than three eligible petitioning creditors, the court granted the motion to dismiss. Booher filed this timely appeal.

### IV. DISCUSSION

Creditors may place an entity in bankruptcy against its will under 11 U.S.C. § 303, which provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contin-

gent as to liability or the ·subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; · ·

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 of such claims.

11 U.S.C. § 303(b)(1) & (2).

▪ Under either subsection (1) or (2), § 303(b) allows an involuntary petition to be brought only by holders of claims that are "not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. § 303(b)(1). "The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich. 1986).

▪ *Lough* set forth the test for determining whether a claim is subject to a bona fide dispute. "[I]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." *Id.* In determining whether a claim is subject to a bona fide dispute, the bankruptcy court must not resolve any genuine issues of fact or law. *Id.*

This test has been adopted by the third, seventh, eighth, and tenth circuits. *See Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363 (8th Cir.1991), *cert. denied*, 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992); *B.D.W. Associates, Inc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65 (3d Cir. 1989); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (10th Cir.1988); *In re Busick*, 831 F.2d 745 (7th Cir.1987). Many bankruptcy courts have also used this test. *See, In re Atwood*, 124 B.R. 402, 408 (S.D.Ga.

1991); *In re Leach*, 92 B.R. 483, 487 (Bankr. D.Kan.1988); *In re Ramm Industries, Inc.*, 83 B.R. 815, 823 (Bankr.M.D.Fla.1988). The Panel concludes that *Lough* establishes the proper test for determining whether a petitioning creditor's claim is subject to a bona fide dispute and will apply it in this case.

▪. The Panel further concludes that in determining the number of the. alleged debtor's creditors and thus whether a petition requires three petitioning creditors, the bankruptcy court should only count creditors that qualify as petitioning creditors. Section 303(b)(2) states, "if there are fewer than 12 such holders," then one or more "such holders" can commence an involuntary petition. 11 U.S.C. § 303(b)(2). The explanation of who qualifies as "such holders" is found in the previous subsection. It is a holder of a claim "that is not contingent as to liability or the subject of· a bona fide dispute." 11 U.S.C. § 303(b)(1). Accordingly, in determining the count of creditors whose claims are not subject to bona fide disputes, the court should use the same *Lough* test as· it uses in determining whether the petitioning creditors are qualified to file an involuntary petition. *See Atwood*, 124 B.R. 402; *In re Braten*, 99 B.R. 579 (Bankr.S.D.N.Y.1989); *Lough*, 57 B.R. 993; *In re Skye Marketing Corp.*, 11 B.R. 891 (Bankr.E.D.N.Y.1981); 2 *Collier on Bankruptcy* ¶ 303.03[1] (Lawrence P. King ed., 15th ed. 1997) Finally, the Panel concludes that the petitioning creditors have the burden of proof. *In re Atwood*, 124 B.R. 402, 408.

In the present case, the bankruptcy court first determined the number of qualified creditors and then the number of qualified petitioning creditors. The Panel will address the issues on appeal in the same order.

**A. Although the bankruptcy court applied. an incorrect standard of law in making its factual findings regarding the total number of creditors, its factual finding that there were twelve or more creditors was correct.**

The bankruptcy court found that Eastown had the following fifteen creditors: United States (tax lien); State of Ohio (tax liens, unemployment and worker's compensation

claims); City of Riverside (taxes); Montgomery County (personal property tax); Ron Coker (receiver fees); Jamie Smith ($12,300 judgment); Joey Beilharz ($1,800 claim); Dayton Power & Light ($200 claim); Majestic Auto (disputed claim); Odessa Auto Auction (disputed claim); Jimix Repair (potential $160 claim); Auto Body Shop (disputed claim); Scott Wilson (disputed claim); AT&T ($8 claim); and Dayton Auto Auction (invoice). (Transcript of May 2, 1997 bench decision at 6–10.)

There are several problems with the court's analysis of the number of creditors. First, the court made a factual finding regarding the number of creditors without determining whether each creditor would qualify as a petitioning creditor under § 303(b). Second, the court sometimes counted a creditor despite finding Eastown's liability to that creditor disputed. Finally, some claims which the court found to be disputed were not actually subject to a bona fide dispute and the creditors with those claims should have been counted as eligible creditors. The Panel will review the evidence as to each creditor to determine whether Booher met its burden of proving a bona fide dispute under *Lough.*

Eastown owed tax debts to the United States, the State of Ohio, the City of Riverside, and Montgomery County. (Transcript of May 2, 1997 bench decision at 5.) Booher has not challenged the bankruptcy court's factual findings as to these four creditors. These claims are not subject to a bona fide dispute under the *Lough* test.

▉ The bankruptcy court found that Ron Coker, the trustee during the receivership, and Diane Gentile, the trustee's attorney, had claims for fees. (Transcript of May 2, 1997 bench decision at 7–8; Transcript of May 1, 1997 hearing at 106–107.) Booher has not challenged these factual findings and has not presented any genuine issue of material fact regarding these two creditors. However, the bankruptcy court improperly treated Coker and Gentile as one creditor. (Transcript of May 2, 1997 bench decision at 10.) Coker and Gentile have separate claims against Eastown and should be counted as separate creditors.

Smith is one of the petitioning creditors. (Transcript of May 2, 1997 bench decision at 5.) He filed a complaint seeking $2,300 compensatory damages and $10,000 punitive damages. An entry of default was entered against Eastown on July 22, 1996. Booher does not challenge this claim, and under the *Lough* test, there is no bona fide dispute.

The court determined that Beilharz had a claim for approximately $1,800. (Transcript of May 2, 1997 bench decision at 6.) Booher has not challenged the court's finding that Beilharz is a creditor. Under the *Lough* test, this claim is not subject to a bona fide dispute.

The court determined that Dayton Power & Light had a $200 claim. (Transcript of May 2, 1997 bench decision at 10.) Joe Opperman, who claims ownership of Eastown with his son, Eric Opperman, testified that he saw an invoice from Dayton Power & Light. However, he could not testify to the date of the invoice and he did not bring a copy of the invoice to court. (Transcript of May 1, 1997 hearing at 111.) At first, Booher had asserted that it might not be a debt of Eastown because Opperman did not have the exact dates. In closing arguments, however, Booher's attorney conceded that it could be a valid debt. (Transcript of May 1, 1997 hearing at 205.) The court accepted Opperman's testimony and counted this creditor. Under the *Lough* test, this conclusion was not erroneous.

▉ The bankruptcy court counted Majestic Auto Repair as a creditor. (Transcript of May 2, 1997 bench decision at 6.) There was considerable testimony about the relationship between Majestic Auto Repair and Eastown from Joe Opperman and Todd Moss, Eastown's former manager. Joe Opperman testified that the owner of Majestic, Chester Pope, confirmed that Eastown owed Majestic for repairs. (Transcript of May 1, 1997 hearing at 122.) Moss testified that Pope signed a letter which stated, "that Eastown did not owe him any money and he wanted to be left alone." (Transcript of May 1, 1997 hearing at 171.) Neither party offered the letter into evidence. Moss also testified that Eastown had never paid the

debt, and that Pope had signed a release because he did not want to be called into court. (Transcript of May 1, 1997 hearing at 172.) Eric Opperman testified regarding an invoice from Majestic showing that Eastown owed it $3,107.67. The court viewed the invoice, but did not admit it into evidence. (Transcript of May 1, 1997 hearing at 175–177.) The court heard evidence from Todd Moss, Eric Opperman and Joe Opperman that there was an outstanding debt to Majestic. Although Todd Moss asserted that a release had been signed, the release was not offered or admitted into evidence. The finding that this debt was not subject to a bona fide dispute is erroneous. The petitioning creditors presented evidence that there was a release of the debt. Even though neither the release nor the letter were in evidence, the assertion that it exists is enough to satisfy the *Lough* test and raise a genuine issue of material fact. Majestic Auto Repair should not be counted in determining whether Eastown had twelve or more eligible creditors.

The court found that Odessa Auto Auction was a creditor for fees owing by Eastown for processing vehicles for auction. (Transcript of May 2, 1997 bench decision at 7.) Joe Opperman testified that there is a fee associated with auction transactions and that he must have seen an invoice from Odessa. (Transcript of May 1, 1997 hearing at 114.) Booher did not present any evidence that Odessa's claim was subject to a bona fide dispute. The finding that Odessa Auto Auction was a creditor was not clearly erroneous.

■ There was conflicting testimony regarding Jimix Repair. Joe Opperman testified that the owner of Jimix Repair approached him and asked him if Eastown was going to pay for the repairs that Jimix Repair had performed to a vehicle that Eastown owned. However, Joe Opperman could not recall the owner's name and testified that he had not seen any invoice regarding this transaction. (Transcript of May 1, 1997 hearing at 116.) Todd Moss testified that there was no money owed to Jimix Repair. (Transcript of May 1, 1997 hearing at 169.) The evidence regarding this creditor is very weak. Eastown did not have any evidence to support its claim that it owed a debt. The petitioning creditors offered the testimony of the former manager that there was no debt owed. There is a bona fide dispute regarding this claim and this creditor should not be counted.

Todd Moss and Joe Opperman also testified regarding the alleged debts owed to Jimix Body Shop. Both stated that Jimix Body Shop and Jimix Repair were separate entities. (Transcript of May 1, 1997 hearing at 116, 171.) Moss testified that Jimix Body Shop was owed money and was presently in possession of a trailer/tow dolly. (Transcript of May 1, 1997 hearing at 168–169.) Joe Opperman testified that he learned of the debt when he attempted to reclaim the tow dolly. (Transcript of May 1, 1997 hearing at 116.) Booher did not present any evidence that this debt was not owed. Indeed, its own witness confirmed that Jimix Body Shop had an outstanding claim. This claim is not subject to a bona fide dispute. The factual finding that Jimix Body Shop was a creditor was not clearly erroneous.

■ The bankruptcy court determined that Scott Wilson was a creditor with an $800 claim. (Transcript of May 2, 1997 bench decision at 9.) Eric Opperman testified that he had discovered Scott Wilson's name in Eastown's computer system and that Wilson had claimed that Eastown owed him $700–800 based on a transaction with Moss. (Transcript of May 1, 1997 hearing at 179–180.) On the other hand, Moss testified that he did not know of any Scott Wilson or what claim he could have against Eastown. (Transcript of May 1, 1997 hearing at 172.) The court weighed the testimony and rejected Moss's testimony. Under *Lough*, however, it was improper to weigh the evidence. This claim is subject to a bona fide dispute and should not be counted.

■ The court counted AT&T as a creditor, based on evidence of a bill in the amount of eight dollars. The court properly noted that the size of the bill is not an issue. The bankruptcy code does not exclude small and recurring claims from consideration in determining the number of creditors. *See e.g., In re Fischer,* 202 B.R. 341 (E.D.N.Y.

1996); *In re Fox*, 162 B.R. 729 (Bankr. E.D.Va.1993); *In re Rassi*, 701 F.2d 627 (7th Cir.1983). Booher initially challenged whether this was a pre-petition debt, asserting that the bill was dated after January 31, 1997. In closing statements, the attorney for Booher argued that the date of the bill was important, asking "how can a non-entity incur a debt?" The court responded, "If you don't cancel the phone, they charge you." The attorney agreed and said that was probably the same for the utilities. The attorney then withdrew his objection to treatment of AT&T as a creditor, saying, "Let's count it." (Transcript of May 1, 1997 hearing at 205.) Booher's challenge to this debt was specific enough to raise a genuine issue of material fact. However, after Booher withdrew the dispute, the court properly found that AT&T was an eligible creditor.

The bankruptcy court determined that Dayton Auto Auction was a creditor. Joe Opperman testified that Eastown owed a $20 fee for a car processed by Dayton Auto Auction, based on an invoice dated February 9, 1996. (Transcript of May 1, 1997 hearing at 117–118.) The bankruptcy court found that there was evidence that although the invoice was dated after the business had ceased operation, the claim was actually a pre-petition claim. Therefore, the court determined that Dayton Auto Auction was a creditor. (Transcript of May 2, 1997 bench decision at 9.) The petitioning creditors presented no evidence of a bona fide dispute regarding this debt. The determination that Dayton Auto Auction was an eligible creditor was not clearly erroneous.

The bankruptcy court did not address whether Sprint should be counted as a creditor. However, Booher's attorney conceded this debt in closing arguments. Accordingly, Sprint was an eligible creditor.

Although the bankruptcy court did not apply the *Lough* test in determining the number of Eastown's eligible creditors, its finding that Eastown had twelve or more creditors was correct. Booher had the burden of proving which creditors' claims were subject to bona fide disputes in an effort to establish that Eastown had fewer than twelve creditors. Given that burden, the Panel finds that

the following fourteen creditors' claims are not subject to bona fide disputes: United States, State of Ohio, City of Riverside, Montgomery County, Jamie Smith, Joey Beilharz, Ron Coker, Diane Gentile, AT&T, Dayton Power & Light, Jimix Body Shop, Odessa Auto Auction, Dayton Auto Auction and Sprint.

### B. The bankruptcy court correctly found that there were fewer than three qualified petitioning creditors.

Because Eastown had twelve or more eligible creditors, § 303(b)(1) required that three eligible creditors join in the petition. The bankruptcy court found that there were fewer than three qualified petitioning creditors. (Transcript of May 2, 1997 bench decision at 10–14.) "The bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous." *Rimell*, 946 F.2d at 1365. Booher argues that there were a sufficient number of petitioning creditors. Although Booher's brief focused on alleged errors regarding the memoranda of intent to join filed by Beilharz and the IRS, the Panel will review the findings regarding all of the potential petitioning creditors.

### 1. The bankruptcy court correctly found that petitioning creditors Booher and Graham were not qualified to join in the involuntary petition.

"The petitioning creditors bear the burden of proof on their involuntary petition against the Debtor by the preponderance of the evidence." *In re Everett*, 178 B.R. 132, 139 (Bankr.N.D.Ohio 1994). "It has been established that the burden of proof is on the creditors in an involuntary petition 'to show that their claims were not contingent as to liability or the subject of a bona fide dispute.'" *In re Gutfran*, 210 B.R. 672, 673 (Bankr.D.Conn.1997) (quoting *In re Reid*, 773 F.2d 945, 946 (7th Cir.1985)). "The petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist." *Id.* (quoting *Rimell*, 946 F.2d at 1365).

In the present case, the bankruptcy court properly applied the *Lough* test in determining whether the petitioning creditors' claims were subject to bona fide disputes. (Transcript of May 2, 1997 bench decision at 11.) The bankruptcy court found that the claims of Booher and Graham were subject to bona fide disputes and that neither qualified as a petitioning creditor. (Id. at 13.)

The court determined that there was a genuine issue of material fact regarding Eastown's potential liability to Booher. Jerry Booher testified that the basis of Booher's claim was that Eastown never provided title to trucks that Booher had purchased from Eastown. (Transcript of May 1, 1997 hearing at 56.) Jerry Booher further testified that he purchased one of the trucks in his own name rather than Booher. (Id. at 58–59.) He also testified that he paid the auction house directly rather than paying Eastown. (Id. at 60.) Eric Opperman testified that he was aware of these transactions and that they had occurred during the time that Eastown was in receivership. He also testified that the receiver had not authorized the transactions, and that the receivership did not receive money for those vehicles. (Id. at 72.) The court determined from this testimony that there was controversy whether Eastown received any money from that transaction. If Eastown did not receive any money from the transaction, it would not owe Booher any money if the transaction was rescinded. The Panel finds no error in the bankruptcy court's determination. The Panel also notes that Booher did not indicate the nature or amount of its claim on the involuntary petition. The bankruptcy court properly determined that Booher did not meet its initial burden of presenting a prima facie case that its claim is not subject to a bona fide dispute.

The bankruptcy court also determined that Graham did not qualify as a petitioning creditor. Graham testified that he had purchased cars at an auction and that the cars were recalled by Eastown, but the purchase price had not been returned. (Id. at 64–65.) However, Graham also stated that he had a license to sell used cars, and that Jerry Booher wanted to buy cars at an auction using his license. (Id. at 62, 66.) Graham testified that he did not go to the auction to bid on the vehicles which were the basis of his claim. Rather, Jerry Booher paid him and he paid the auction, so that Jerry Booher could purchase the cars without a license. (Id. at 66–67.) When asked if he was "out any money," Graham responded, "not necessarily." (Id. at 67.) The bankruptcy court found that Graham "was a very open and honest witness," and that his claim was subject to a bona fide dispute. (Transcript of May 2, 1997 bench decision at 14.) The Panel finds no error in this determination. The testimony presented a question of law whether Graham was Booher's agent. If he was Booher's agent, then the claim would belong to Booher, not Graham. Therefore, Graham did not qualify as a petitioning creditor.

The bankruptcy court did not make a specific finding as to the final petitioning creditor, Jamie Smith. Smith asserted a claim for $12,300 based on an entry of default. The Oppermans did not assert any genuine issue of material fact or a meritorious contention that Eastown was not liable on the default judgment. The bankruptcy court did not disqualify Smith as a petitioning creditor, and this was not error.

The bankruptcy court made a finding that there were fewer than three qualified petitioning creditors with claims that were not contingent and not subject to a bona fide dispute. The Panel concludes that the bankruptcy court properly determined that Booher and Graham were not qualified. Of the original three petitioning creditors, Smith was the only qualified creditor.

**2. The bankruptcy court correctly vacated its order approving the "memorandum of intent to join as a creditor" filed by Joey Beilharz.**

Booher has also appealed the bankruptcy court's May 2, 1997 order vacating the court's April 16, 1997 order. The April 16 order allowed Joey Beilharz's "memorandum of intent to join as a creditor" and considered it timely. Booher argues that the bankruptcy court erred in vacating this order and that the court violated § 303(c) because it did not

allow Beilharz to join as a creditor even though it had not yet dismissed the case. Booher also argues that the imposition of a deadline for any qualified creditor to join the petition violates § 303(c).

Section 303(c) provides:

After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

11 U.S.C § 303(c).

Eastown moved to vacate the April 16 order on the grounds that it was entered without notice and hearing in violation of FED. R. BANKR.P 9006(d) (Motion to Vacate at 1.), and that the "memorandum of intent" was filed after the deadline that was set by agreement in order to manage the case. (Transcript of May 1, 1997 hearing at 3.) Eastown also filed a motion asking the bankruptcy court to determine whether filing a memorandum indicating an intent to join an involuntary petition actually joins a creditor.

The bankruptcy court heard the motion to vacate the April 16 order and the motion in limine simultaneously. (Transcript of May 1, 1997 hearing at 2.) At the conclusion of the hearing, the court vacated the April 16 order and found that as of the day of the hearing, no additional creditors had joined the petition.

In making that determination, the court noted that although the IRS had filed a memorandum of intent to join, it was not represented at the hearing. The court asked Beilharz's attorney if Beilharz wanted to be counted as a petitioning creditor or if all he had done was indicate an intent to join in the future. (Id. at 28.) The attorney carefully answered that the only thing Beilharz had authorized was an intent to join, and that he had not given his attorney authority to indicate that he was a petitioning creditor. (Id.) The bankruptcy court determined that the memoranda of intent filed by the IRS and Beilharz were insufficient for them to become petitioning creditors and that neither had come to the hearing seeking to become petitioning creditors. The bankruptcy court did not violate § 303(c) in its determination that the IRS and Beilharz were not petitioning creditors, and did not err vacating the April 16 order.

The Panel declines to address whether setting a deadline for creditors to join the petition violates § 303(c). In the present case, although the court set a deadline, the court demonstrated its willingness to consider other creditors that sought to join the petition. Prior to the dismissal, no creditor actually sought to join the petition. The deadline set by the bankruptcy court caused no prejudice to any party.

### V. CONCLUSION

The involuntary petition filed against Eastown did not meet the requirements of 11 U.S.C. § 303. Dismissal of the petition was appropriate. The order of the bankruptcy court is AFFIRMED.