**In re XOFOX INDUSTRIES, LTD., Debtor.**

**Bankruptcy No. 98–21696.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Nov. 29, 1999.

Randall L. Frank, BayCity, MI, for Debtor.

### CORRECTED OPINION OVERRULING OBJECTION OF THE STATE OF MICHIGAN TO CONFIRMATION OF DEBTOR'S PLAN

ARTHUR J. SPECTOR, Chief Judge.

■ On February 16, 1999, the Debtor filed its First Amended Plan of Reorganization. On March 3, 1999, the State of Michigan, Department of Treasury, filed an objection to the confirmation of the plan, stating that: "The Department of Treasury objects to the confirmation of the debtor's plan because the plan provides no plan default remedies to creditors." Because the Bankruptcy Code does not require that a plan provide specific remedies for defaults which may or may not occur post-confirmation, the objection will be overruled.

The State relies on 11 U.S.C. § 1123(a)(5)(G), which provides that "[n]otwithstanding any otherwise applicable non-bankruptcy law, a plan shall—(5) provide adequate means for the plan's implementation, such as—(G) curing or waiving of any default."

■ The statute clearly mandates that the plan include "means for implementation" which are "adequate." But it does not purport to dictate what "means" are to be used. The optional nature of the provisions listed in § 1123(a)(5) is evident from the very fact that they are proceeded by the term "such as." *See* 7 *Collier on Bankruptcy,* ¶ 1123.05 (15th ed. rev.1998) ("The types of means listed in § 1123(a)(5) are clearly illustrative . . . ."); *id.* at ¶ 1123.01[5][d] ("[U]nder § 1125(a)(5)(G) the plan *may* provide for the cure of de-

faults and deacceleration of the previously accelerated debt.") (emphasis added).

There can be no doubt on this point when one considers the kinds of provision that we see listed in the paragraph. Subparagraph (C), for example, envisions the "merger or consolidation of the debtor with one or more persons." Surely the State does not suggest that the plan is also deficient because it does not provide for merger or consolidation.

■ The State's objection is off base for another reason. Section 1123(a)(5)(G) was primarily intended to allow for the cure or waiver of pre-petition defaults. Through use of a provision of the type described in that paragraph, the debtor can preserve the benefits of a pre-petition contract which is in default. 8 *Collier on Bankruptcy,* ¶ 1322.07[1] (suggesting that it would be unusual for a debtor to propose to cure a default in relation to an unsecured claim, and that "proposals to cure or waive defaults are of little practical significance in relation to unsecured claims");[1] *see generally, e.g., In re Taddeo,* 685 F.2d 24, 26–27 (2nd Cir.1982) ("Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified."). *See also In re Entz–White Lumber & Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988) (where the court recognized that deaccelerating a secured debt is only one consequence of curing a default; negating default interest rates would be another).

Even if § 1123(a)(5)(G) pertained to post-confirmation defaults, and even if a provision permitting the "curing or waiving" of such defaults were mandatory in a plan, the State's objection is nonsensical. A provision permitting curing or waiving post-confirmation defaults would obviously run to the benefit of the defaulting party—inevitably under the State's theory—the reorganized debtor. Can the State really

---

1. These comments were made in the treatise's discussion of 11 U.S.C. § 1322(b)(3). They apply with equal form here, however, as both statutes refer to "the curing or waiving of any default."

be upset that the plan does not provide that if the reorganized debtor should default under the terms of the confirmed plan, it retains the right to cure (or "waive"—whatever that might mean in this context) the default?

Not surprisingly, the State failed to cite any case supporting its unusual view of § 1123(a)(5)(G). Instead it floated some bizarre and internally inconsistent public policy argument.

▮ The State's objection states that "[a] post confirmation default should be treated as any other contractual default under state law." This premise is indubitably correct. Section 1141(a) of the Code provides that the plan becomes a legally binding agreement. *In re Pettibone Corp.,* 134 B.R. 349, 351–352 (Bankr.N.D.Ill.1991) ("A plan of reorganization is a contract which binds a debtor and its creditors."); *In re Herron,* 60 B.R. 82 (Bankr.W.D.La. 1986) ("Once a plan is confirmed, the pre-confirmation debt is 'replaced' with a new indebtedness as provided in the confirmed plan. The new indebtedness is in essence a new and binding contract between the debtor and the creditors."); *In re Ernst,* 45 B.R. 700, 702 (Bankr.D.Minn.1985) ("The plan is essentially a new and binding contract, sanctioned by the Court, between the debtor and his preconfirmation creditors."); *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546, 551 (Bankr.E.D.Mich. 1984); *In re Paradise Valley Country Club,* 31 B.R. 613 (D.Colo.1983). Therefore

> [u]nless the matter at issue is within the exclusive jurisdiction of the Bankruptcy Court, the mere reservation of jurisdiction in the case by the Bankruptcy Court post-confirmation does not foreclose the right of a party to seek his remedy upon default under the plan in a state court having jurisdiction over the subject matter of the dispute ... and no relief need be obtained from the Bankruptcy Court prior to the commencement of the state court action.

*Ernst,* 45 B.R. at 702. *See also In re Jordan Mfg. Co.,* 138 B.R. 30, 37 (Aside from its Bankruptcy Code remedies, *see infra* p. 543, another "remedy is for a creditor to resort to state court remedies, bypassing the bankruptcy court completely.") It is black-letter law that if a reorganized debtor defaults on plan payments to an unsecured creditor, the creditor can pursue the debtor for the restructured debt under the plan. And because the State's proposition is a correct statement of that law, the remainder of its argument is without merit.

Despite its premise that a post-confirmation default may be remedied as any other breach of contract, the State nevertheless insists that the plan is *illegal* because it does not in so many words say so. It is as if the State believes that extrinsic law does not exist unless it is incorporated expressly into a provision of the plan. It complained that the plan failed to "grant creditors clear and concise default remedies in forums with concurrent jurisdiction." But to the extent that concurrent jurisdiction exists, it is defined by statute. It is beyond dispute that the parties can neither expand nor limit a court's subject matter jurisdiction. We, therefore, reject as frivolous the suggestion that a plan must spell out, or broaden, the contours of that jurisdiction.

▮ Because a post-petition default under the terms of a confirmed plan enables all creditors whose claims are treated under the plan to enforce those terms in any court of competent jurisdiction, the State has no basis to complain that the lack of a specific provision in the plan granting it a green light to proceed in state venues to enforce its remedies is a ground to deny confirmation of the plan. Moreover, the Bankruptcy Code already supplies some additional remedies for the State and any other creditor who complains about post-petition defaults.

Section 1142(a) requires that the post-confirmation debtor "shall carry out the plan and shall comply with any orders of the court." Subsection (b) provides that: "The court may direct the debtor and any other necessary party to execute or deliver

or to join in the execution or delivery of any instrument required to affect the transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." Any party in interest aggrieved by the reorganized debtor's failure to perform the terms of a confirmed plan would seemingly have access to the Court—without any provision in the plan so authorizing it—to seek an order directing the debtor "to perform any other act ... that is necessary for the consummation of the plan." Presumably, this would include making payments in accordance with the plan. *See In re Harlow Properties, Inc.*, 56 B.R. 794 (9th Cir. BAP 1985) (bankruptcy court could entertain creditor's motion for an order directing debtor to sell real property as provided in plan).

Moreover, a creditor may seek dismissal or conversion of the case to chapter 7 for the debtor's "inability to effectuate substantial consummation of a confirmed plan [or] material default by the debtor with respect to a confirmed plan." 11 U.S.C. §§ 1112(b)(7) and (8). Therefore, if a debtor defaults under a confirmed plan, the creditor may move, pursuant to § 1112(b), to convert the case to chapter 7 or dismiss the case, or may resort to state court. (*But see Jordan Mfg. Co.*, 138 B.R. at 37–38) (what a creditor may not do is resort to the bankruptcy court to collect an individual obligation arising out of a reorganization.). Again, these are remedies in addition to whatever remedies exist under nonbankruptcy law.

For these reasons, the Court has overruled the State's objection and confirmed the plan.[2]

---

**2.** In its objection, the State included a lengthy paragraph which it suggested be included in the confirmation order. The Court rejects the suggestion for the reasons stated above. Moreover, the suggested language would have been for the benefit solely of the "priority tax claims or administrative expense claims." The concerns the State expressed in its objection, however, would seem to cut across the board and apply to every creditor in the case.