**In re TROUTMAN ENTERPRISES, INC., Reorganized Debtor.**

**Bankruptcy No. 99–35371.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Jan. 24, 2000.

William A. Sherman, II, Tim J. Robinson, Cincinnati, OH, for Alleged Debtors.

Ira Rubin, Dayton, OH, Special Counsel for Trustee, Donald F. Harker, III.

Donald F. Harker, Dayton, OH, Chapter 7 Trustee.

Arthur P. Hollencamp, Dayton, OH, for Petitioning Creditor, National City Bank.

L. Michael Bly, Dayton, OH, for Petitioning Creditor Roberds, Inc.

James R. Kirkland, Dayton, OH, Petitioning Creditor, James R. Kirkland & Associates.

Robert F. Cowdrey, Dayton, OH, for Nationwide Insurance Company.

James C. Ellis, Dayton, OH, for Citywide Building Finance Corporation.

## DECISION ON ORDER GRANTING MOTION TO DISMISS INVOLUNTARY PETITION

THOMAS F. WALDRON, Chief Judge.

This matter comes before the court on the motion of Troutman Enterprises, Inc., as the Reorganized Debtor, to dismiss the involuntary Chapter 7 petition brought against it by National City Bank, the Conover Realty Company, Roberds, Inc., and James R. Kirkland & Associates, the Petitioning Creditors. Dismissal of the involuntary petition is appropriate.

### I. FACTS

The relevant facts are undisputed. Troutman Enterprises, Inc. ("TEI") filed a Chapter 11 case on April 23, 1992. On September 1, 1993, an order was entered confirming TEI's Amended Plan of Reorganization. On October 30, 1995, the Internal Revenue Service moved to convert TEI's Chapter 11 case to one under Chapter 7 pursuant to 11 U.S.C. § 1112(b) for defaulting on its obligations under the confirmed Chapter 11 plan. The IRS's motion to convert was set for hearing, and all creditors who were scheduled in the Chapter 11 case were noticed. The names and addresses of each of the Petitioning Creditors appear on the certificate of service. No objections were filed, and an order converting the confirmed Chapter 11 case to Chapter 7 was entered on January 4, 1996. (A more detailed description of the circumstances of the converted Chapter 7 case and related litigation may be found in *In re Troutman Enterprises, Inc.,* Case No. 92–01988, Adv. 99–3099, Decision On Order Granting In Part And Denying In Part Trustees's Complaint For Turnover

And Authorizing Distribution Of Funds, which is contemporaneously entered.)

On October 18, 1999, an involuntary Chapter 7 petition was filed against TEI by the Petitioning Creditors. On November 10, 1999, TEI moved for dismissal of the involuntary petition. The parties filed memoranda in support of their respective positions.

## II. JURISDICTION

In accordance with the Standing Order of Reference entered in this district on July 30, 1984, the court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a) and (b). The within matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate; § 157(b)(2)(B)—allowance or disallowance of claims against the estate; and § 157(b)(2)(O)—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.

## III. ANALYSIS

■ Section 303(b) of the Bankruptcy Code permits creditors to bring an involuntary petition under Chapter 7 or 11 as follows:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,775 of such claims[.]

11 U.S.C. § 303(b)(1) & (2).

■ Pursuant to § 303(b)(1), an involuntary petition can only be sustained under subsection (1) or (2) if the petitioning parties have claims, as defined in § 101(5), "not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. § 303(b)(1); *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 965 (6th Cir. BAP 1998). " 'The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.' " *Eastown*, 215 B.R. at 965 (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich.1986)).

The Bankruptcy Appellate Panel further adopted the test employed in *Lough* for determining whether a petitioning creditor's claim is the subject of a bona fide dispute under § 303(b): " '[I]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.' " *Id.* (quoting *Lough*, 57 B.R. at 997). The Panel also noted "that in determining the number of the alleged debtor's creditors ... the bankruptcy court should only count creditors that qualify as petitioning creditors." *Id.* The involuntary Chapter 7 petition filed against TEI by the Petitioning Creditors must be dismissed if the application of law to undisputed facts establishes that the Petitioning Creditors do not possess claims against the Reorganized Debtor.

The Petitioning Creditors' involuntary petition comes before the court in an unusual posture: TEI's Chapter 11 plan was confirmed on September 1, 1993; its Chapter 11 was converted to Chapter 7 on January 4, 1996; and the involuntary peti-

tion was filed more than three-and-a-half years postconversion on October 18, 1999. However, as stated in the Petitioning Creditors' memorandum in opposition to TEI's motion to dismiss, all of the claims asserted by the Petitioning Creditors as the basis for the involuntary petition are preconversion claims provided for in TEI's confirmed Chapter 11 plan.

In the present case, the Petitioning Creditors seek to make use of one bankruptcy law remedy, an involuntary petition against TEI as a reorganized debtor, more than three years after another remedy occurred, the conversion of TEI's Chapter 11 case to a Chapter 7 on January 4, 1996. Accordingly, the determinative issue in the unique circumstances of this case becomes whether the Petitioning Creditors, who obtained claims against the Reorganized Debtor pursuant to the terms of the confirmed Chapter 11 plan, possess in the case which has been, postconfirmation, converted to Chapter 7, *any claims* against the Reorganized Debtor.

 "[T]he confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation[.]" 11 U.S.C. § 1141(d)(1)(A). Confirmation also "vests all of the property of the estate in the debtor," and "except as otherwise provided in the plan or in the order confirming the plan . . ., the property dealt with by the plan is free and clear of all claims and interests of creditors[.]" 11 U.S.C. § 1141(b) & (c). Section 1141(a) further provides, "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan, and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). Noting that "[t]he effect of confirmation under the plain language of § 1141(a) is to bind all parties to the terms of a plan of reorganization[,]" the Sixth Circuit further observed the necessary finality of confirmation in defining subsequent relationships between creditors and the reorganized debtor: "Confirma-

tion of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir.1991). *See also Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992) ("Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings."); *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114, 118 (5th Cir. 1992) ("§§ 1141(d)(1) and 1144 statutorily preclude the [creditor]'s complaints to the extent that they are based on events and actions pre-dating [the debtor]'s confirmation."). As one court described the Chapter 11 confirmation and discharge process:

[T]he discharge provided by Section 1141(d) presumes that, in the process of formulating and voting on a reorganization plan, all classes of claimants will be able to use whatever leverage they may have, such as priority status, to effect the best treatment they can obtain for their particular claims. However, once the reorganization plan is approved by the bankruptcy court, each claimant gets a "new" claim, based upon whatever treatment is accorded to it in the plan itself. Thereafter, each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions.

*In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3rd Cir.1992).

██ Once a Chapter 11 plan is confirmed, the plan operates similar to a contract between the reorganized debtor and its creditors. *See, e.g., Guardian Savs. & Loan Ass'n v. Arbors of Houston Assocs. Ltd. Partnership (In re Arbors of Houston Assocs. Ltd. Partnership)*, 172 F.3d 47, 1999 WL 17649, *3 (6th Cir. Jan. 4, 1999) (stating "[a] plan of reorganization, which resembles a consent decree, is akin to a

contract between the debtor and its creditors that is approved by the bankruptcy court[,]'" and holding that disputes over the meaning of a confirmed plan are settled by state contract law); *Benjamin Coal*, 978 F.2d at 826 (holding postconfirmation creditors had only a contractual claim against the reorganized debtor based on the terms of the confirmed plan); *In re Xofox Indus., Ltd.*, 241 B.R. 541, 543 (Bankr.E.D.Mich.1999) (collecting cases and holding a confirmed Chapter 11 plan is a new and binding contract between creditors and the reorganized debtor).

■ Where a reorganized debtor fails to satisfy the terms of its confirmed plan, aggrieved creditors may choose from among several options to pursue recovery under both bankruptcy and nonbankruptcy law. Nonbankruptcy remedies include contractual claims under the plan and asserting rights in collateral as specified in the plan. *See, e.g., Xofox Indus.*, 241 B.R. at 543 (stating "[i]t is black-letter law that if a reorganized debtor defaults on plan payments to an unsecured creditor, the creditor can pursue the debtor for the restructured debt under the plan[,]" and noting that "a post-petition default under the terms of a confirmed plan enables all creditors whose claims are treated under the plan to enforce those terms in any court of competent jurisdiction"). In addition to state court remedies, the bankruptcy court remedies available to creditors of a reorganized debtor include seeking dismissal of the Chapter 11 case, conversion of the Chapter 11 case to one under Chapter 7, or instituting a new involuntary bankruptcy filing against the reorganized debtor. *See, e.g., Xofox Indus.*, 241 B.R. at 544 ("[I]f a debtor defaults under a confirmed plan, the creditor may move, pursuant to § 1112(b), to convert the case to chapter 7 or dismiss the case, or may resort to state court."); *Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.)*, 201 B.R. 838, 848 (Bankr.S.D.Ala.1996) ("There is no prohibition against a case involving a confirmed Chapter 11 plan being converted to Chapter 7.... Conversely, there is no prohibition on a new Chapter 11 or Chapter 7 filing by a reorganized debtor after a final confirmation order.").[1]

Sections 348(a) and (d) speak to the effect of conversion and the kinds of claims held by creditors following the conversion:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

. . . .

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case

---

1. A respected treatise describes the postconfirmation legal landscape as follows:

Where a reorganized debtor fails to meet its obligations under its confirmed plan or fails to meet other postconfirmation obligations, its creditors must think carefully about what avenue to take to obtain maximum recovery. In most small cases the bankruptcy court is irrelevant. The secured creditors either take all by foreclosure or replevin, or the enterprise simply closes its doors with little fanfare and no need for court activity. In other cases, however, either the reorganized debtor or some creditor decides that a return to the bankruptcy court for liquidation is needed. Their immediate reaction is to convert the original case from Chapter 11 to Chapter 7.

This course is fraught with confusion and unintended consequences. It is inappropriate in most cases. Only when the conversion occurs very shortly after confirmation and before the bulk of the property of the debtor in possession is transferred, or if avoidance actions based on the original filing date of the Chapter 11 are available and desirable, does such a conversion make sense. In nearly every case the preferable option is an independent enforcement of the obligation, or a new Chapter 7 or liquidating Chapter 11 case, either voluntary or involuntary.

DAVID A. LANDER, ESQ. & HON. ROBERT D. MARTIN, *Postconfirmation Conversion From Chapter 11 to Chapter 7 Rarely Makes Sense*, Norton Bankr.Law Adviser at 10, Sept. 1994.

that is converted under section 1112 ... of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(a) & (d).

■ Creditors faced with a reorganized debtor's default under a confirmed plan would have a basis to file an involuntary petition against a reorganized debtor if they hold unsatisfied postconfirmation claims which meet the requirements of § 303(b); however, where a Chapter 11 case with a confirmed plan has been converted to Chapter 7, § 348(d) requires that all *postpetition* claims, including any that arise under the confirmed plan, be treated as *prepetition* claims. Thus, while the creditors' original claims are replaced by obligations under the confirmed plan or discharged if not addressed by the plan, after the case has been converted, "[s]ection 348(d) indicates, however, that claims against the estate or the debtor that arise after 'the order for relief' (petition for Chapter 11 in this case) and before conversion (to Chapter 7 in this case) are deemed to have arisen before the petition." *United States v. Ginley (In re Johnson)*, 901 F.2d 513, 520 (6th Cir.1990) (parentheticals in original). *See also Benjamin Coal*, 978 F.2d at 827 ("Section 348(d) relegates all claims in a converted case to pre-petition status, except Section 503(b) administrative expense claims."); *In re Toms*, 229 B.R. 646, 652 (Bankr.E.D.Pa.1999) ("Accordingly, [§ 348(d)] provides, in general, that claims which arise after a bankruptcy case is commenced, but before it is converted to chapter 7, are treated as though they were prepetition claims.").

Each claim advanced by the Petitioning Creditors as a basis for the involuntary petition is a claim treated in TEI's confirmed Chapter 11 plan, and hence, each of the Petitioning Creditors' claims arose after the order for relief in the Chapter 11 and prior to the conversion to Chapter 7. Pursuant to § 348(d), the Petitioning Creditors' claims arising from TEI's confirmed Chapter 11 plan are limited to the treatment accorded in the plan, and are deemed to have arisen prepetition and thus will be accorded whatever rights to collateral and distribution to unsecured creditors are appropriate to prepetition claims in the Chapter 7 case. Accordingly, the Petitioning Creditors do not have claims which can be asserted against the Reorganized Debtor, but are now limited to asserting their claims against the converted debtor in the context of the Chapter 7 case. *See, e.g., Benjamin Coal*, 978 F.2d at 826 (holding that in a confirmed Chapter 11 case which had been converted to Chapter 7, the creditor "had only an unsecured non-priority contractual claim based on the terms of the plan and, inasmuch as those terms were not fulfilled, [the creditor] was obligated to file his proof of claim in timely fashion after the conversion to a Chapter 7 case.").

■ While this result may seem counterintuitive in the context of typical Chapter 11 practice, "[s]tatutes, regulations, and rules of the court must be read in a 'straightforward' and 'commonsense' manner. When we can discern an unambiguous and plain meaning from the language of a [statute], our task is at an end." *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir.1997) (internal citation omitted). *See also In re Palmer*, 228 B.R. 880, 883 (6th Cir. BAP 1999) (The Supreme Court has stated that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" (citation omitted)); *Andersson v. Security Fed. Sav. & Loan*, 209 B.R. 76, 78 (6th Cir. BAP 1997) ("As the United States Supreme Court has instructed courts in examining the provisions of the Bankruptcy Code, '[w]e have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says

there.'" (citation omitted)) (collecting cases). As noted by the Seventh Circuit in the context of serial Chapter 11 filings, "[t]hat the drafters may not have fully realized the results of these provisions in combination does not mean that they cannot be so used." *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 867 (7th Cir.1989).

The text of § 348(d) and its effect upon all claims arising subsequent to the order for relief but prior to conversion in a converted bankruptcy case is clear and unambiguous, and does not produce a result in this case demonstrably at odds with the intention of the drafters. By relegating all postpetition, preconversion claims, including those arising from the confirmation of a Chapter 11 plan, to the status of prepetition claims upon conversion to Chapter 7, § 348(d) leaves the Petitioning Creditors without claims against the Reorganized Debtor and, accordingly, unable to satisfy the requirements of bringing an involuntary petition pursuant to § 303(b).

### IV. CONCLUSION

The motion of Troutman Enterprises, Inc. to dismiss the involuntary Chapter 7 petition brought against it by the Petitioning Creditors is **GRANTED**, and the involuntary Chapter 7 petition, case number 99–35371, is **DISMISSED**. The court has, by separate order, scheduled a pretrial conference to consider what, if any, issues remain in connection with this case.

**SO ORDERED**.