### In the Matter of Kelly Ann LEWIS, Debtor.

### Civil Action No. 08–14775.

United States District Court,
E.D. Michigan,
Southern Division.

May 21, 2009.

---

Hugh R. Pierce, Royal Oak, MI, for Debtor.

### ORDER AFFIRMING BANKRUPTCY COURT'S ORDER OF NOVEMBER 7, 2008

BERNARD A. FRIEDMAN, District Judge.

## I. Introduction

Appellant, Trustee Stuart A. Gold, appeals from the Bankruptcy Court's November 7, 2008 Order Overruling "Trustee's Objection to Debtor's Second Amended Claim of Exemptions."

## II. Standard of Review

This matter involves a question of statutory interpretation. Such questions of law are reviewed de novo. "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri),* 266 B.R. 651, 653 (6th Cir. BAP 2001). "No deference is given to the trial court's conclusion of law." *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.),* 215 B.R. 960, 964 (6th Cir. BAP 1998).

## III. Procedural History and Facts

On March 19, 2008, Debtor, Kelly Ann Lewis, filed her voluntary Chapter 7 bankruptcy petition.

The Debtor is a former employee of Ford Motor Company ("Ford"). On September 14, 2006, the United Auto Workers ("UAW") and Ford agreed to offer eight buyout options to every active Ford UAW worker. One of the options, and the one chosen by Debtor, was the Ford Educational Opportunity Program ("EDOPP"). This program's description provides that a plan participant will receive, for up to four years, tuition reimbursement up to $15,000.00 per year, continued health care benefits, and an annual living expense stipend, which is equivalent to 50% of the participant's annualized straight-time hourly wage at the time of termination.

The EDOPP program further provides that the participant may terminate the program at any time during the four-year period, at which time she may elect to receive a payment that is the difference between an amount offered pursuant to the Special Termination of Employment Program ("STEP"), which is $100,000.00, and the cost incurred by Ford thus far for the participant's enrollment in the program.

Participation in the program required that the participant sign an acknowledgment that her separation from Ford is voluntary and that the participant is "physically able to work and suffers from no disability that would preclude [the participant] from doing [her] job." In addition, the participant waives all future claims against Ford, including pension benefits, pension credits, unemployment compensation, and continued employment.

The Debtor accepted the EDOPP on November 27, 2006. To date, the Debtor has received $11,201.55 in tuition, books and fees. She has also received two stipend payments, each for $27,622.40. The first was paid on June 3, 2007, and the second was paid on May 18, 2008, after she filed her Chapter 7 petition. If the Debtor terminated her participation in the EDOPP now, the payment to her under the program would be $33,553.65.

On March 19, 2008, when the Debtor filed her original schedules in her bankruptcy case, she did not disclose the anticipated EDOPP benefits on her Schedule B or exempt them on her Schedule C. She did, however mention them on her Schedule I, which asked her to describe any increase or decrease in income reasonably anticipated to occur within the next year. On June 30, 2008, the Debtor filed her First Amended Schedules B and C, in which she disclosed the EDOPP and claimed an exemption for it of $10,200.00 under 11 U.S.C. § 522(d)(5) and a 100% exemption under 11 U.S.C. §§ 522(d)(10)(E) and (d)(11)(E). On August 1, 2008, the Debtor filed her Second Amended Claim of Exemptions, which claimed an exemption of the EDOPP of $10,200.00 under 11 U.S.C. § 522(d)(5) and a 100% exemption pursuant to 11 U.S.C. §§ 522(d)(10)(E), (d)(11)(E), (d)(12), (d)(10)(A) and (d)(10)(C).

On August 14, 2008, the Trustee filed his Objection to Debtor's Second Amended Claim of Exemptions, in which he asserted that all of the statutes cited other than 11 U.S.C. § 522(d)(5) were inapplicable to the EDOPP, and that the Debtor should be precluded from claiming an amended exemption under the EDOPP under any provision of 11 U.S.C. § 522(d)(5) on the basis of bad faith and concealment.

On October 27, 2008, at an evidentiary hearing, the Bankruptcy Court ruled that the EDOPP constituted property of the estate and that 11 U.S.C. §§ 541(a)(6) and (b)(3) did not act to exclude the EDOPP

from property of the estate. The Bankruptcy Court also ruled that the Debtor was not precluded from amending her exemptions on the basis of bad faith or concealment of assets.

On November 7, 2008, the Bankruptcy Court ruled that the Debtor was entitled to an exemption of $10,200.00 pursuant to 11 U.S.C. § 522(d)(5) because there was no bad faith or concealment. The Bankruptcy Court then ruled that 11 U.S.C. § 522(d)(11)(E) applied to the EDOPP, and that the EDOPP was entirely exempt under this provision. All other objections to exemptions raised by the Trustee were overruled as moot.

## IV. Analysis

The Trustee submits that the Bankruptcy Court erred when it decided that the exemption pursuant to 11 U.S.C. § 522(d)(11)(E) applied to the EDOPP.

Section 522(d)(11)(E) of the Bankruptcy Code provides, in pertinent part:

§ 522. Exemptions

(d) The following property may be exempted . . .

(11) The debtor's right to receive, or property that is traceable to—

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was dependent, to the extent reasonably necessary for the support of the debtor an any dependent of the debtor.

The Court believes, and the parties agree, that at issue is the question of whether the EDOPP constitutes payment in compensation of loss of future earnings. The applicability of 11 U.S.C. § 522(d)(11)(E) to a buyout is a matter of first impression for this Court.

The Trustee offers both the legislative history of 11 U.S.C. § 522(d)(11) and cases from other districts in support of his argument that the EDOPP is not exempt under this provision, as the statute requires "bodily injury" in order to permit exemption. The Court has reviewed these proposed authorities, but is unpersuaded that they are controlling.

The Court must begin its analysis of the meaning of 11 U.S.C. § 522(d)(11) "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the language of the statute is clear, this Court's inquiry is at an end. "Where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.*

Section 522(d)(11)(E) is clear, concise, and stands alone. It does not require bodily injury as a prerequisite for exemption. It simply exempts compensation for loss of future earnings. While subsection (D) of Section 522(d)(11) contemplates payment on account of personal bodily injury, this subsection is clearly delineated from subsection (E) by the presence of the word "or" between the two. The Court rejects any theory that subsection (E) carries with it the proscriptions of subsection (D).

The language of the statute, "a payment in compensation of loss of future earnings of the debtor," is clear and unambiguous. Accordingly, the only question before the Court is whether the EDOPP constitutes such a payment. The Court finds that it does. The statute includes benefits given to compensate a debtor for any event that affects the debtor's future earnings in some way. The statute does not provide any limitations as to what sorts of events or what types of compensation are included, or even to whether such event can be

considered "adverse."[1] Accordingly, the Court will not presume to inject such limitations into the statute.

The debtor's termination of her employment from Ford constitutes an event that resulted in a "loss of future earnings." The EDOPP was offered to her as compensation for such termination. It is immaterial whether such compensation was negotiated by the parties, or whether such termination was voluntary. In either case, the EDOPP benefit is within the meaning of 11 U.S.C. § 522(d)(11) as a "compensation" for such loss of future earnings, to wit, her wages while working at Ford.

## V.  Order

Accordingly,

IT IS ORDERED that the Bankruptcy Court's Order of November 7, 2008 is AFFIRMED.

---

1. The Trustee notes that the Bankruptcy Court stated that the benefit was given to compensate the Debtor for an event that "adversely" affects the debtor's future earnings in some way. The Trustee then argues that the Debtor's acceptance of a buyout offer is not an "adverse event" that affected her future earnings. The Court finds that, while the Bankruptcy Court may have used the pronoun "adverse," the statute itself does not contain that language, and an analysis of whether the buyout was "adverse" is not necessary.