NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0046n.06
Filed: October 28, 2004

**No. 02-6532**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WILLIAM KEN ALEXANDER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WADDEY & PATTERSON, P.C., | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Appellee. | ) | |

Before:  MOORE and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

SUTTON, Circuit Judge.  Like many other statutes, the Bankruptcy Code permits the recovery of damages, costs and fees if another party initiates a suit in "bad faith."  11 U.S.C. § 303(i)(2).  And like many other areas of law, bankruptcy law entrusts the decision to grant costs primarily to the court that has "the opportunity . . . to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.").

---

[*]The Honorable John R. Adams, United States District Judge for the Northen District of Ohio, sitting by designation.

In this appeal, William Ken Alexander challenges the district court's order affirming the bankruptcy court's denial of costs after the dismissal of an involuntary bankruptcy petition brought against him by Waddey & Patterson, P.C. Finding nothing in the record to convince us that the bankruptcy court's determination was clearly erroneous, we affirm.

I.

Before they became adversaries in litigation, William Alexander and Waddey & Patterson shared an attorney-client relationship. Alexander is a small inventor. His inventions include an "expandable breathable laminate" (U.S. Patent No. 6,316,373), an "abdominal support belt" (U.S. Patent No. 5,257,419) and a "woven back support belt with rigidity control" (U.S. Patent No. 5,070,866).

Starting around 1992, Waddey & Patterson, a Nashville law firm, represented Alexander in patent litigation and other patent matters. The parties' first collaboration was a patent infringement lawsuit against DeRoyal Industries, for whom Alexander had previously worked. The lawsuit settled, and Alexander paid Waddey & Patterson a contingency fee for the firm's legal work.

The parties' subsequent collaborations did not fare as well. Waddey & Patterson initially agreed to take Alexander's patent infringement action against a company named Ergodyne on a contingency fee basis, but later, after the case was transferred from Nashville to Knoxville, stated that it could not continue the representation without charging an hourly fee. Waddey & Patterson also mistakenly transposed two numbers in one of Alexander's patent applications, delaying its

issuance by thirteen months. The law firm compensated Alexander for the additional fees, but not for the lost revenues, that resulted from the thirteen-month delay. Both incidents left the amount that Alexander owed Waddey & Patterson for legal representation in some confusion. Compounding this uncertainty, the Ergodyne patent litigation settled (on April 30, 2001) for less than the two parties had anticipated, leaving Alexander with insufficient funds to pay all of his obligations.

In July 2001, Alexander sent Waddey & Patterson a cashier's check for $30,000 with an offer to pay an additional $20,000 to settle all his bills with the firm, even though the law firm's previous bill indicated that he owed $83,079.34 in legal expenses and that his account was 90 days past due. Suggesting that Alexander knew he owed more than he had offered, his previous correspondence stated that he would have paid his bills "in full" had the Ergodyne settlement been larger and that he was "left without the means of paying all the bills." JA 128, 131. Waddey & Patterson rejected Alexander's settlement offer, but kept his check without cashing it, claiming an "attorney's lien." JA 27–28. Alexander later informed Waddey & Patterson that he had not paid several other creditors and that he was "financially devastated" and had no prospects of employment. JA 33. He also spoke of a "financial crisis" and the "possibility of [another attorney] representing [him] in bankruptcy proceedings." JA 92. The following month, Alexander wrote two letters to the law firm suggesting that he had hired other counsel and that litigation would ensue unless "all issues [are] addressed." JA 96. At the same time, Waddey & Patterson discovered that Alexander had, contrary to his statements, paid other creditors on time, which prompted the law firm to threaten

Alexander with an involuntary bankruptcy petition. On August 28, 2001, the law firm sent Alexander's new attorney a letter demanding payment for the disputed patent-work fees.

The next day, Waddey & Patterson filed an involuntary bankruptcy petition against Alexander, swearing, as required by statute, that no bona fide dispute existed as to the debt. The law firm did not run a credit check on Alexander, check for other lawsuits against him or determine how many creditors he had. Shortly before the suit was scheduled to go to trial, Waddey & Patterson filed a motion to dismiss their action, acknowledging that "the matter is essentially a two party dispute between the petitioning creditor and the debtor." JA 8.

The bankruptcy court scheduled a hearing on April 10, 2002, for a determination of damages under 11 U.S.C. § 303(i). On July 3, 2002, the bankruptcy court denied Alexander's request for expenses, fees and damages, reasoning that, "[i]n view of [Alexander's] representations to Waddey in the weeks preceding the Involuntary Petition, the court cannot find under any standard that [Waddey & Patterson] acted in bad faith." Bankr. Ct. Op. at 8. The district court adopted the bankruptcy court's order on November 7, 2002.

II.

Despite Alexander's suggestion to the contrary, *see* Alexander Br. at 16 ("the appeal involves the determination of a legal issue"), our review of his challenge to the bankruptcy court's cost and fee decision is quite limited. All courts agree that in making the bad-faith determination under § 303(i) a bankruptcy court is the principal finder of fact and that, under Fed R. Bankr. P.

8013, its determination of good or bad faith can be set aside only if "clearly erroneous." *See Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1502 (11th Cir. 1997) (applying a clearly erroneous standard); *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir. 1992) ("Appellants point to nothing in the record which could possibly render the bankruptcy court's findings of bad faith to be clearly erroneous."); *Adell v. John Richards Homes Bldg. Co.*, 312 B.R. 849, 855 (E.D. Mich. 2004) ("Whether a § 303 involuntary petition is filed in bad faith is a question of fact, which is reviewed under the deferential standard of clearly erroneous."); *Camelot, Inc. v. Hayden*, 30 B.R. 409, 411 (E.D. Tenn. 1983) ("Whether a party acted in bad faith is essentially a question of fact.").

In this instance, the bankruptcy court's finding that Waddey & Patterson lacked the "bad faith" necessary for the recovery of costs under § 303(i) was not clearly erroneous. Alexander had intimated to Waddey & Patterson that he was considering filing for bankruptcy. He had also implied that he was paying other creditors at the same time that he was withholding payment from Waddey & Patterson. Although Waddey & Patterson knew that Alexander had just settled the Ergodyne patent litigation for several hundred thousand dollars, Alexander gave the firm every reason to believe that he was spending this money to repay other debts and that he would not have enough money to meet his obligations to the law firm. Under these circumstances, Waddey & Patterson could reasonably have believed that Alexander would soon declare bankruptcy; that, by paying off his other creditors, he would exhaust his finances before reaching the bankruptcy court; and that the 90-day window for challenging impermissible preference payments would soon close. *See Gen. Trading*, 119 F.3d at 1502 (holding that a desire "to protect [oneself] against other creditors'

obtaining a disproportionate share of [ ] assets . . . is a proper purpose for filing an involuntary petition").

In addition to asking us to reassess the facts, Alexander advances two other arguments, both of which grow out of the same misunderstanding. In Alexander's view, this case must be viewed in the context of state fiduciary obligations that attorneys owe their clients. That is not true. The case requires us to interpret a specific provision, § 303(i), in a specific statute, the Bankruptcy Code. Nothing in § 303(i) indicates that it incorporates state fiduciary-duty law, and Alexander has offered no authority to support his point. But even if we were to read the statute in light of state-law cases, the appropriate point of reference would be cases defining the phrase "bad faith," not cases defining an attorney's fiduciary duties. Alexander's assertion that "as a matter of law, no client can bring upon himself the filing of an Involuntary Petition by his own attorney," Alexander Br. at 18, is similarly misguided and similarly unsupported. The Code says no such thing.

III.

For these reasons, we affirm.